# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **N-E-M-B**, an adult,<br><br>    Petitioner,<br><br>    v.<br><br>**CAMMILLA WAMSLEY**,[1] Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; **TODD LYONS**, Acting Director of Immigration and Customs Enforcement; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; **KRISTI NOEM**, Secretary of the Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **PAMELA BONDI**, Attorney General of the United States,<br><br>    Respondents. | Case No. 3:25-cv-989-SI<br><br>Agency No. AXXX-XXX-099<br><br>**OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS** |

Stephen W. Manning, Tess Hellgren, Jordan Cunnings, and Nelly Garcia Orjuela, INNOVATION LAW LAB, 333 SW Fifth Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Petitioner.

Scott E. Bradford, United States Attorney; and Joshua Keller and Ariana N. Garousi, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Respondents.

---

[1] The Court substitutes Cammilla Wamsley in place of Drew Bostock under Rule 25(d) of the Federal Rules of Civil Procedure.

**Michael H. Simon, District Judge.**

Petitioner N-E-M-B, a citizen of Ecuador, came to the United States seeking protection after being kidnapped and threatened with death by the Los Choneros organized crime syndicate. Petitioner was released into the United States on August 23, 2023, on an Order of Release on Recognizance under 8 U.S.C. § 1226(a). Respondents commenced removal proceedings, which entitled Petitioner to due process rights under 8 U.S.C. § 1229a.

When Petitioner attended his first immigration court hearing, the government moved to dismiss his removal proceedings. The immigration judge accepted the government's arguments, over Petitioner's objections, and dismissed Petitioner's case. Petitioner was then arrested by several masked agents of the U.S. Immigration and Customs Enforcement ("ICE") Office of Enforcement and Removal Operations ("ERO").

Shortly after his arrest, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). ECF 1. The Court promptly entered an Order requiring that Respondents not move Petitioner out of the District of Oregon without providing advance notice to the Court. ECF 4. Because ICE does not have a detention center in Oregon, Respondents released Petitioner on "interim parole."[2]

Petitioner now requests that the Court grant his Petition on Count Two, alleging that his detention violated the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA") and its implementing regulations, and Count Five, alleging that his detention violated his Fifth Amendment Due Process rights.

---

[2] In an email to the Court dated June 11, 2025, an attorney for the government stated that Petitioner was "released from custody yesterday because ICE does not have a detention center in Oregon."

PAGE 2 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

Respondents raise only two arguments in response to the Petition. Respondents argue that the Court lacks jurisdiction over this case because Respondents have released Petitioner from custody and ICE provides sufficient assurance that it will not redetain Petitioner. Respondents also argue that the Court should, as a prudential matter, deny the Petition because Petitioner failed to exhaust administrative remedies. Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.[3] For the following reasons, the Court rejects the government's two arguments and thus grants the Petition on Counts Two and Five.

## BACKGROUND

### A. Habeas Corpus Petitions Under 28 U.S.C. § 2241

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).

---

[3] *See Soleimani v. Larose*, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) ("On the claims Petitioner does raise, namely an unlawful search and seizure claim under the Fourth Amendment, an unlawful detention claim under the APA, and a procedural due process claim under the Fifth Amendment, Respondents' answer to the Petition is silent. By failing to respond to the claims actually asserted, Respondents have conceded the claims. With that concession, and given the undisputed facts of this case, the Court grants the Petition." (citations omitted)); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession.").

**B. Factual Background**

Petitioner is an Ecuadoran national who was kidnapped and threatened with death by the Los Choneros organized crime syndicate. Hab. Pet. ¶ 1. Petitioner left Ecuador and entered the United States on August 22, 2023, without a visa or other authorization, and outside a port of entry or other authorized entry point. *See* ECF 20-1 at 1. He was encountered by Customs and Border Patrol ("CBP"), who determined that Petitioner was inadmissible to enter the United States under 8 U.S.C. § 1182(a)(6)(A)(i). *See id.* He was placed in § 1229a removal proceedings and directed to report to an immigration judge in Portland, Oregon on December 12, 2024. *Id.* He was released on his own recognizance, with the form specifically citing 8 U.S.C. § 1226(a), which provides for release on "conditional parole."[4] *See* ECF 20-2 at 1 (stating that "in accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance"). The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Aguilera v. Albarran*, 2025 WL 3485016, at *1 (E.D. Cal. Dec. 4,

---

[4] The Ninth Circuit has explained that in the immigration context, release on recognizance is "another name for 'conditional parole' under § 1226(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

2025) ("In doing so [releasing on own recognizance], immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community.").

Petitioner moved in with family in Beaverton, Oregon. Declaration of Petitioner ("Pet. Decl.") ¶ 6 (ECF 20). He checked the immigration court's website and discovered that his immigration court date had been postponed until June 2025. *Id.* ¶ 8. He went to his first court hearing for his § 1229a removal proceedings on June 10, 2025. *Id.* ¶ 9. At the hearing, the government requested that his case be dismissed. *Id.* ¶ 10. Petitioner objected, and asked for time to consult with an attorney. *Id.* In a generic form opinion consistent with opinions issued in other similar immigration cases, the immigration judge found the government's reasons for dismissal "more persuasive" and dismissed Petitioner's removal proceeding without prejudice. *See* ECF 18-1 at 10-12 (written decision of the immigration judge). Petitioner felt helpless and confused, but a volunteer attorney appeared to assist Petitioner. *See* Pet. Decl. ¶¶ 11-12. As Petitioner and his attorney left the courtroom to meet in a private room, Petitioner saw three masked men waiting in the hallway. *Id.* ¶ 12. When Petitioner left the private room, he was arrested by several masked agents. *Id.* ¶¶ 13-14.

Petitioner had never committed a crime, had never been arrested, and was afraid. *Id.* ¶¶ 14-15. His cell phone and belongings were taken, and he was handcuffed, and then later fingerprinted and his feet were shackled. *Id.* ¶¶ 14, 17. His attorney quickly filed in this Court Petitioner's habeas Petition. ECF 1. Before Petitioner could be removed from Oregon for further processing or detention, the Court issued an Order requiring that Petitioner not be removed from the District of Oregon without advance notice to the Court. *See* ECF 4. Oregon has no ICE detention center, so Petitioner was released on "interim parole." *See* Pet. Decl. ¶ 18; Declaration of Jeffrey Chan ("Chan Decl") ¶ 7 (ECF 17).

In the Petition, Petitioner requests, among other relief, that the Court: (1) declare that Petitioner's detention without an individualized determination violates the Fifth Amendment's Due Process Clause; (2) declare that Respondents' actions with respect to Petitioner's removal proceedings and subsequent detention were illegal; (3) issue a Writ of Habeas Corpus ordering Petitioner's release from custody; (4) issue an Order prohibiting Respondents from transferring Petitioner out of the District of Oregon without prior approval of the Court; (5) award Petitioner his attorney's fees and costs; and (6) grant any other relief that the Court deems just and proper. In his reply, Petitioner requests alternative relief, should the Court find his originally-requested relief too broad, of ordering that (1) the revocation of Petitioner's release without an individualized determination based on his individual facts and circumstances was unlawful; (2) Respondents may not redetain Petitioner unless an authorized official under 8 C.F.R. § 236.1(c)(9) makes an individualized finding of probable cause that Petitioner is a flight risk or a danger to the community; and (3) Respondents may not remove Petitioner from the District of Oregon without 30 days' notice so that Petitioner may commence an appropriate habeas proceeding.

On July 3, 2025, Petitioner filed an appeal with the BIA of the immigration judge's decision. ECF 18-1. Jeffrey Chan, Assistant Field Office Director for ICE Office of Enforcement and Removal Operations ("ERO") in Portland, Oregon states under oath that ICE will not redetain Petitioner "through the adjudication of his pending BIA appeal, absent criminal activity, failure to comply with release requirements set by ERO, or a change in Petitioner's pending case with the BIA." Chan Decl ¶ 8.

# DISCUSSION

## A. Whether the Court Has Jurisdiction to Review This Matter

Respondents argue that the Court lacks jurisdiction to review this matter because Respondents have released Petitioner from custody. Respondents contend that now that Petitioner no longer is in custody, this case falls outside the core of habeas because the case no longer seeks to release Petitioner from confinement, quoting *Preiser* and *Pinson v. Carvajal*, 69 F.4th 1059, 1072 (9th Cir. 2023). Petitioner, however, was confined at the time he filed his Petition and is seeking release based on alleged unlawful confinement. Thus, his case is unlike *Pinson* and goes to the "core" of habeas as defined by the Supreme Court in *Preiser*. *See* 411 U.S. at 489; *see also Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the [Alien Enemies Act], their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)).

In *Pinson*, the petitioners were challenging conditions of their confinement during the COVID-19 pandemic. After considering "whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested," the Ninth Circuit determined that it was not. *Pinson*, 69 F.4th at 1072-75 (emphasis in original). Thus, the case was not reviewable in habeas. *Id.* at 1075. Indeed, the court in *Pinson* emphasized that "[r]elease is the only available remedy—and thus a claim is at the core of habeas—if a successful petition demonstrates that the *detention itself* is without legal authorization." *Id.* at 1070 (emphasis in original). That is precisely what Petitioner here is arguing in his Petition.

Petitioner remains "in custody" for purposes of § 2241 because he challenges Respondents' authority to revoke his conditional parole and detain him. Respondents did not

provide him with notice and an opportunity to be heard before revoking his conditional parole as required under § 1226(b).[5] *See Jimenez v. Bostock*, 2025 WL 2430381, at *3 (D. Or. Aug. 22, 2025) ("Here, Petitioner alleges that the revocation of his release from custody without an individualized determination—made by an authorized official—that he is a danger to the community or a flight risk violated the APA and his right to procedural Due Process under the Fifth Amendment. These claims for relief, which are focused on statutory and regulatory provisions relating to custody decisions, squarely address the validity of Petitioner's confinement in the first place, not the conditions of it. . . . A review of all the Claims for Relief, including the legal basis for them, squarely relate to the validity of Petitioner's confinement. That Petitioner prays for additional relief beyond the custody issue does not change the fact that the crux of the Petition is that the revocation of his release violated the law.").

Further, Petitioner argues that Respondents did not release him on similar terms as his original conditional parole, creating "collateral consequences." *See, e.g.*, *Abdala v. I.N.S.*, 488 F.3d 1061, 1064-65 (9th Cir. 2007) (describing the "collateral consequences" doctrine, where so long as a petitioner was in custody at the time a petition was filed and remains subject to actual collateral consequences that the petition could successfully address, his petition remains live); *Devitri v. Cronen*, 290 F. Supp. 3d 86, 90 (D. Mass. 2017) (finding habeas jurisdiction proper where the petitioners "challenge[d] a condition of their custody, specifically, ICE's abrupt change in policy regarding participants in Operation Indonesian Surrender and the unfairly

---

[5] "[N]umerous courts have held that the Due Process clause entitles a noncitizen to notice and an opportunity to be heard before his parole or bond is summarily revoked under section 1226(b)." *J.C.E.P., v. Wofford*, 2025 WL 3268273, at *6 (E.D. Cal. Nov. 24, 2025) (gathering cases). Indeed, courts have held that due process requires that after being released on conditional parole, due process requires a bond hearing in which an immigration judge determines that the noncitizen is a flight risk or a danger to the community before redetention is permissible under § 1226(b). *See Faizyan*, 2025 WL 3208844, at *6-8 (gathering cases).

compressed timetable of the issuance of the Denials of Stays and/or Notices of Revocation of Release." (cleaned up)). Thus, Petitioner remains in Respondents' custody despite his release on "interim parole" for one year.

The more apt question is whether Respondents' temporary release of Petitioner *after* he filed his Petition renders his case moot. Respondents contend that it is unclear whether the "voluntary cessation" exception to mootness applies in a habeas case, relying on *Picrin-Peron v. Rison*, 930 F.2d 773 (9th Cir. 1991). This exception requires that a party claiming mootness based on the voluntary cessation of conduct has a "heavy" burden to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719-20 (2022) (quotation marks omitted). Respondents also argue that even if the voluntary cessation exception to mootness does apply to habeas cases generally, it would not bar the Court from finding this case moot because Respondents have met their burden to show that it is absolutely clear that they will not redetain Petitioner, based on the sworn statement of Jeffrey Chan, Assistant Field Office Director of ICE ERO in Portland, Oregon. The court rejects Respondents' arguments.

The voluntary cessation exception applies in the habeas context. In *Picrin-Peron v. Rison*, the Ninth Circuit declined to "decide whether the voluntary cessation exception to the mootness doctrine applies in habeas corpus cases." 930 F.2d at 776. The Ninth Circuit, however, has since applied the exception to an immigration habeas case. *See, e.g.*, *Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) ("The voluntary cessation exception to mootness applies because—absent action by this court—the government could redetain Diouf, and deny him a bond hearing, at any time. The government has offered no assurance that Diouf will not be redetained; *Picrin-Peron v. Rison*, is therefore distinguishable." (citations omitted)),

*abrogated in part on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018). Further, the Supreme Court has indicated that the doctrine applies in habeas cases. *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025) (rejecting that the government's agreement not to remove the petitioners while their habeas petitions were pending mooted the case, citing the voluntary cessation doctrine).

Respondents' conduct does not moot Petitioner's claim under the voluntary cessation doctrine. A defendant has a "formidable burden" of meeting the voluntary cessation exception because "a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). For voluntary cessation to serve to moot a case, Petitioner's "release from custody [must] completely and irrevocably eradicate[] the effects of the alleged violation," *Corral v. Barr*, 776 F. App'x 953, 954 (9th Cir. 2019) (quotation marks omitted), such that "successful resolution of [his] pending claims could no longer provide the requested relief," *Abdala*, 488 F.3d at 1065. That is not the case here, as Petitioner still has viable claims challenging Respondents' authority to detain Petitioner.

Further, Petitioner has valid challenges to the scope of his current temporary release. Petitioner has only been released on "interim parole" for one year, subject to several caveats. That is not the same as his previous release on his own recognizance, which was for the duration of his immigration proceedings absent revocation under § 1226(b), which includes due process rights. It also is unclear under which statutory provision Respondents issued this "interim parole"—8 U.S.C. § 1226(a), under which Petitioner originally was released and includes due

PAGE 10 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

process rights, or 8 U.S.C. § 1225(b), which is a different statutory regime with less protection.[6] This lack of parity and apparent difference in the basis of his release shows that his current "interim parole" does not moot his claims.

Additionally, the declaration of Mr. Chan does not suffice to moot Petitioner's claims. Mr. Chan only commits to release for one year or through the BIA appeal,[7] whereas Petitioner's original release would have lasted through his entire proceedings, absent proper revocation under § 1226(b). Mr. Chan also does not simply state that ICE will not redetain Petitioner until the BIA determination unless he engages in criminal activity. Instead, Mr. Chan adds the equivocal statements that ICE will not redetain Petitioner absent "failure to comply with [unidentified] release requirements set by ERO" and absent an unspecified "change in Petitioner's pending case with BIA." This is unlike the statement in *Picrin-Peron*, in which the ICE official stated that the petitioner would remain paroled absent involvement with the criminal justice system or his ability to return to Cuba or a third country willing to take him. Mr. Chan's equivocal statements are particularly concerning given DHS's new policy focused on detaining millions of noncitizens

---

[6] Although Respondents do not explain in detail their "interim parole" or provide any documentation relating to that new parole, their brief discusses that the BIA could remand Petitioner's case back to his § 1229a removal proceedings, which Respondents state means that the BIA appeal "affects what detention authority Petitioner could be subjected to." ECF 16 at 6. This appears to show that Respondents currently consider Petitioner under § 1225(b) and temporarily released him under 8 U.S.C. § 1182(d)(5)(A). Courts repeatedly have found that the government may not switch from adjudicating removal under § 1226(a) to under § 1225(b). *See, e.g.*, *Faizyan v. Casey*, 2025 WL 3208844, at *4-6 (S.D. Cal. Nov. 17, 2025) (gathering cases); *Lepe v. Andrews*, --- F. Supp. 3d ----, 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025) (gathering cases).

[7] Mr. Chan both states that Petitioner's parole is valid for one year and that ICE will not redetain Petitioner for the duration of his BIA appeal, subject to certain caveats. It is unclear, however, what ICE will do if Petitioner's BIA appeal lasts for longer than one year. Will ICE renew Petitioner's interim parole or detain him because his interim parole expired? Mr. Chan's two statements are not necessarily harmonious, let alone reassuring.

who otherwise would not have been subject to detention.[8] *See, e.g.*, *Rodriguez Cabrera v. Mattos*, 2025 WL 3072687, at *3 (D. Nev. Nov. 3, 2025) (describing DHS's "sweeping new policy [that] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents to enable them to challenge the government's basis for detaining them" and explaining that "[t]he overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful" (gathering cases) (emphasis in original); *J.M.P. v. Arteta*, 2025 WL 2984913, at *2 (S.D.N.Y. Oct. 23, 2025) (granting temporary restraining order requiring the government to release noncitizen after an earlier court decision required a bond hearing and the immigration judge subsequently granted release in that

---

[8] In July 2025, ICE issued a memorandum describing a new policy. *See, e.g.*, U.S. IMMIGR. AND CUSTOMS ENF'T, Interim Guidance Regarding Detention Authority for Applications for Admission (July 8, 2025) (hereinafter "ICE Memo"), *available at* https://perma.cc/5GKM-JYGX (AILA Doc. No. 25071607). The Court in *Rodriguez* explained this new policy:

> On July 8, 2025, DHS issued a notice entitled 'Interim Guidance Regarding Detention Authority for Applicants for Admission' to all ICE Employees. The Notice indicated that DHS, in coordination with the Department of Justice, 'revisited its legal position' on the INA and determined that Section 235 [codified at § 1225], rather than Section 236 [codified at § 1226], is the applicable immigration authority for any alien present in the United States 'who has not been admitted . . . whether or not at a designated port of arrival.' Accordingly, 'it is the position of DHS that such aliens are subject to [mandatory] detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.' The Notice further provides '[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.

*Rodriguez Cabrera*, 2025 WL 3072687, at *3 (first two alterations added, remaining alterations in original) (footnotes omitted) (quoting ICE Memo).

bond hearing but the government engaged in unlawful "unilateral[]" and "essentially *ex parte*" conduct to refuse to release the noncitizen").

Mr. Chan's statement does not make it "absolutely clear" that Petitioner will not be improperly redetained. *See Friends of the Earth*, 528 U.S. at 189. Courts have rejected arguments of mootness in recent immigration habeas cases, relying on the voluntary cessation doctrine. *See, e.g.*, *Bautista v. Santacruz*, --- F. Supp. 3d ----, 2025 WL 3289861, at *4-5 (C.D. Cal. Nov. 20, 2025); *Del Cid v. Bondi*, 2025 WL 2985150, at *10-11 (W.D. Pa. Oct. 23, 2025); *A.S.R. v. Trump*, 782 F. Supp. 3d 224, 237-38 (W.D. Pa. 2025). Respondents' argument that the Court lacks jurisdiction fails.

### B. Failure to Exhaust Administrative Remedies

Respondents' remaining argument is that Petitioner failed to exhaust his administrative remedies. "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Although 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quotation marks omitted).

Petitioner argues that exhaustion is inapposite because he is not challenging an immigration judge's decision, but is challenging Respondents' revocation of his parole, which is not part of the immigration judge's decision on appeal before the BIA. Petitioner also argues that exhaustion is futile because even if the BIA affirms dismissal of his § 1229a proceedings, that

PAGE 13 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

does not resolve the question of whether he was appropriately detained under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9).

The Court finds that further administrative review would be futile. The many similar cases to Petitioner's shows "DHS and DOJ's commitment to the positions" taken in this case. *Cf. Bautista*, 2025 WL 2670875, at *8. Additionally, the BIA decision of *Matter of Yahure Hurtado*, 29 I & N. Dec. 216 (BIA 2025), in which "the BIA adopted the government's new interpretation of § 1225(b)(2) and held [immigration judges] have no authority to consider bond for any individual who entered the country without inspection" demonstrates that if Petitioner attempted to raise these issues before the BIA, it would be futile. *See Ramirez v. Noem*, 2025 WL 3270137, at *5 (D. Nev. Nov. 24, 2025) (describing *Yahure Hurtado* and finding futility for administrative exhaustion); *Faizyan v. Casey*, 2025 WL 3208844, at *4 (S.D. Cal. Nov. 17, 2025) (finding futility because of *Yahure Hurtado* (gathering cases)); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (cleaned up)).

"Additionally, considering [Petitioner's] due process challenge to [his] detention without the opportunity for release on bond, this matter falls into the futility exception to the exhaustion requirement 'carved for constitutional challenges to . . . [DHS] procedures.'" *Ramirez*, 2025 WL 3270137, at *6 (quoting *Iraheta-Martinez v. Garland*, 12 F.4th 942, 949 (9th Cir. 2021) (last two alterations in *Iraheta-Martinez*)). As explained by the court in *Ramirez*, for "procedural due process claims in particular, '[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's

PAGE 14 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

ken.'" *Id.* (alterations in original) (quoting *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam); *see also id.* ("[N]either the [BIA] nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer[.]" (last two alterations in original) (quoting *Matter of G.K.*, 26 I. & N. Dec. 88, 96-97 (BIA 2013)).

Further, the factors for requiring prudential exhaustion are not met in this case. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Neither agency expertise nor an administrative appellate record is necessary to determine whether the federal voluntary cessation doctrine applies in this case (the only argument raised by Respondents other than exhaustion). Nor does resolution of this question encourage the bypass of the administrative process. To the contrary, a federal district court decision on whether voluntary cessation applies may provide guidance to Respondents and reduce future cases requiring the bypass of the administrative process. *Cf. Bautista*, 2025 WL 2670875, at *7. Finally, the Court is "unconvinced" that Respondents would have self-corrected given their "unequivocal commitment" to their current position. *See id.*

## C. Merits of the Petition

Because Respondents have not contested the merits of the Petition, the Court grants the Petition, as narrowed by Petitioner in his reply to Counts Two and Five.[9] The Court finds as unrebutted that Respondents violated the APA by failing to follow the INA, its governing

---

[9] The Court expresses no opinion on the merits of any other count alleged in the Petition.

regulations, and caselaw construing § 1226(a) and (b). Respondents released Petitioner on his own recognizance, thereby finding that he was not a flight risk or a danger to the community. Respondents then unlawfully revoked that conditional parole and detained him without due process, or a finding of a change in circumstances, that he was a danger or that he was a flight risk. *See Faizyan*, 2025 WL 3208844, at *6-8 (gathering cases); *see also Sanchez v. LaRose*, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) ("Because Respondents revoked Petitioner's parole and detained her without any rational individualized fact-finding or consideration of the effects of altering their prior decisions, Respondents acted arbitrarily and capriciously in violation of the APA."). For the same reasons, Respondents violated Petitioner's due process rights under the Fifth Amendment. *Faizyan*, 2025 WL 3208844, at *6-8; *see also Salazar v. Casey*, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) ("[B]ecause Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful.").

**D.  Remedy**

The Court finds that the revocation of Petitioner's conditional parole and his detention was unlawful. Although Petitioner currently temporarily is released, that release is insufficient to protect Petitioner's Fifth Amendment Due Process rights. Numerous courts have required that noncitizens in a similar position to Petitioner must be given notice and a hearing before an immigration judge at which the government must prove by clear and convincing evidence that the noncitizen is a flight risk or a danger to the community before the noncitizen may be redetained. *See Faizyan*, 2025 WL 3208844, at *8 & n.6, n.7 (gathering cases); *Jimenez*, 2025 WL 2430381, at *7. The Court finds this remedy to be appropriate. Further, given the unique situation with Oregon not having a detention center and the Court's jurisdiction over this matter, which is hereby retained under the All Writs Act, 28 U.S.C. § 1651, the Court additionally orders

that Respondents must provide at least 30 days' notice before removing Petitioner from the District of Oregon, unless the Court orders otherwise, through the remainder of Petitioner's removal proceedings. *See Jimenez*, 2025 WL 2430381, at *7.

## CONCLUSION

The Court GRANTS the Petition for Writ of Habeas Corpus (ECF 1) based on Counts Two and Five and ORDERS that:

1. Before any redetention of Petitioner, Respondents must provide Petitioner with written notice of the reasons for revocation of his conditional parole and a hearing before an immigration judge to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

2. During the pendency of Petitioner's removal proceedings, before Respondents may remove Petitioner out of the District of Oregon, Respondents must provide Petitioner and the Court with 30 days' notice, unless the Court orders otherwise.

**IT IS SO ORDERED**.

DATED this 9th day of December, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge